O

# United States District Court
# Central District of California

| | |
|---|---|
| ARYOUT MICHAEL THOMAS BHOTIWIHOK et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>FAIRLIFE, LLC et al.,<br><br>    Defendants. | Case № 2:25-cv-01650-ODW (AGRx)<br><br>**ORDER GRANTING SELECT MILK'S MOTION TO DISMISS [71]; AND GRANTING IN PART FAIRLIFE'S AND COCA-COLA'S MOTION TO DISMISS [72]** |

## I. INTRODUCTION

Three representative Plaintiffs bring claims on behalf of a putative class against Defendants Fairlife, Inc.; The Coca-Cola Company; and Select Milk Producers, Inc. (First Am. Compl. ("FAC"), Dkt. No. 45.) In two motions, Defendants now move to dismiss pursuant the First Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Select Milk Mot. Dismiss ("SMTD"), Dkt. No. 71; Fairlife & Coca-Cola Mot. Dismiss ("FMTD"), Dkt. No. 72.) For the following reasons, the Court **GRANTS** Select Milk's Motion and **GRANTS IN PART** Fairlife and Coca-Cola's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.     BACKGROUND[2]

In 2014, Select Milk, a dairy cooperative, partnered with Coca-Cola to launch Fairlife, a company with an eponymous line of premium milk and milk products.[3] (FAC ¶¶ 1, 21, 27.)  In 2020, Coca-Cola acquired Select Milk's remaining shares of Fairlife and became Fairlife's sole owner. (*Id.* ¶ 28.)  However, Select Milk retains operational control of Fairlife and continues to provide milk products for Fairlife. (*Id.* ¶¶ 22, 29.)

Fairlife promotes, and charges more for, high levels of environmental sustainability and animal care. (*Id.* ¶¶ 1, 26.)  For example, Fairlife bottles include the phrase "Recycle Me" on their labels and are stamped with a chasing arrow symbol, indicating recyclability. (*Id.* ¶ 93.)  Fairlife also claims that its farms are "top in the industry for environmental sustainability." (*Id.* ¶ 4.)  However, 0% of Fairlife bottles are recyclable. (*Id.* ¶ 109.)  Moreover, the sustainability practices at Fairlife's farms cause disproportionate environmental damage. (*See, e.g.*, *id.* ¶ 133.)

Fairlife also claims that it follows industry-leading animal care standards and has zero tolerance for abusive practices at farms supplying its milk. (*Id.* ¶ 3.)  In this spirit, Fairlife designed a logo that symbolizes its commitment to animal care (the "Fairlife Logo"):



(*Id.* ¶ 33.)

---

[2] All factual references derive from Plaintiffs' First Amended Complaint unless otherwise noted. Plaintiffs' well-pleaded factual allegations are accepted as true for purposes of resolving the Motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Fairlife is stylized as "fairlife" or "fa!rlife." (FAC ¶ 17.)  For readability, the Court uses Fairlife.

| | |
|---|---|
| 1 | However, successive independent investigations have uncovered horrendous animal abuse at farms supplying Fairlife's milk.  In 2019, third-party Animal Recovery Mission ("ARM") conducted an investigation at several Fairlife suppliers that revealed systemic animal cruelty and neglect.  (*Id.* ¶ 7.)  This investigation led to a consumer class action lawsuit and subsequent settlement involving Fairlife.  (*Id.*)  ARM's investigations continued.  In 2023, ARM investigated two farms—Windy Ridge and Windy Too—that continued to supply Fairlife.  (*Id.* ¶¶ 177–90.)  That investigation revealed rampant animal abuse and neglect, including "[a]nimals kicked, beaten, and punched daily"; "[c]ows slammed into and dragged by tractors and heavy machinery, clearly conscious and in distress"; [c]ows trampled to death as part of [the] milking process"; [n]ewborn calves abandoned and left to die slowly in dark corners of barns and in piles of filth and feces"; and abandonment of cows in "death pens."  (*Id.* ¶¶ 60–61.)  In 2024, ARM investigated two other Fairlife suppliers, Butterfield and Rainbow Valley.  (*Id.* ¶¶ 67, 69.)  This investigation revealed similar instances of animal cruelty and neglect, including "[a]nimals hit in the face, genitals, and other sensitive areas with knives, screwdrivers, and shards of metal," and instances of "workers intentionally and frequently breaking tails of the cows . . . as apparent 'discipline.'"  (*Id.* ¶ 69.) |

Starting in late 2024, ARM also investigated a Select Milk farm, Woodcrest Dairy, which produces milk solely for Fairlife.  (*Id.* ¶ 75.)  In a three-month investigation, ARM documented similar abuse and neglect, including "[d]ragging and crushing animals with tractor buckets"; "shoving a steel tube . . . down the throat of cows restrained in [a] metal head gate cage"; and "[a]ttaching a chain to the fetus of animals in labor," which in some instances caused the calves' death by blunt force trauma.  (*Id.* ¶ 76.)

Up until 2025, Plaintiffs Aryout Michael Thomas Bhotiwihok, Jeremiah Cornelius, and Randy Paugh purchased Fairlife products in reliance on Fairlife's advertising, including the Fairlife Logo and various statements conveying Fairlife's commitment to animal care and sustainability.  (*Id.* ¶¶ 12–14.)  After learning of the

animal abuses uncovered on Fairlife's farms and of the falsity of Fairlife's environmental sustainability and recyclability claims, Plaintiffs ceased purchasing Fairlife products. (*See id.*)

On February 26, 2025, Plaintiffs brought this putative class action against Defendants Fairlife, Coca-Cola, and Select Milk.[4] (Compl., Dkt. No. 1.) Against Fairlife and Coca-Cola, Plaintiffs allege: (1) breach of express warranty; (2) violation of California's False Advertising Law ("FAL"); (3) violation of California's Unfair Competition Law ("UCL"); (4) violation of California's Consumers Legal Remedies Act ("CLRA"); and (5) unjust enrichment. (FAC ¶¶ 211–89.) Against Select Milk, Plaintiffs allege a claim for aiding and abetting Fairlife's and Coca-Cola's FAL, UCL, and CLRA violations. (*Id.* ¶¶ 290–95.) Plaintiffs' proposed class consists of "[a]ll persons residing in California who purchased Defendants' [F]airlife Products during the relevant time period (February 26, 2021 through the present)." (*Id.* ¶ 199.) Fairlife, Coca-Cola, and Select Milk now move to dismiss the First Amended Complaint. (SMTD; FMTD.)

## III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable theory or insufficient facts pleaded to support an otherwise cognizable theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 482, 494 (9th Cir. 2003). The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

---

[4] Plaintiffs also sued Mike McCloskey and Sue McCloskey, both of whom co-founded Select Milk. (FAC ¶¶ 19–20.) However, on January 26, 2026, the Court dismissed the McCloskeys from this action for lack of personal jurisdiction. (Order Grant Mot. Dismiss, Dkt. No. 94.)

Determining whether a complaint states a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court limits its review to the pleadings and must construe all factual allegations in the complaint "as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend, unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Across two motions, Fairlife, Coca-Cola, and Select Milk seek to dismiss Plaintiffs' First Amended Complaint in its entirety. (SMTD 1–2; FMTD 1–2.) Fairlife and Coca-Cola also move to dismiss Coca-Cola as an improperly named defendant. (FMTD 17–18.) Finally, Fairlife and Coca-Cola move to strike Plaintiffs' class action allegations and request for injunctive relief. (*Id.* at 16, 18–20.)

### A. Parent Corporation Liability as to Coca-Cola

Plaintiffs argue that Coca-Cola is a properly named defendant in this action because they allege that Coca-Cola was directly involved in Fairlife's misleading marketing and advertising. (FMTD Opp'n 19–20, Dkt. No. 76.) In the alternative,

Plaintiffs argue that they have sufficiently pleaded potential vicarious liability on a corporate agency theory. (*Id.* at 20.)

Plaintiffs' argument that they have adequately alleged Coca-Cola's direct involvement is unpersuasive. Plaintiffs allege that Coca-Cola is a "member of the plastics coalitions that gave rise to the practices surrounding plastics use" and that Coca-Cola uses similar sustainability marketing to Fairlife's. (*Id.* at 19–20.) However, Plaintiffs fail to tie these allegations to any of their claims. In any event, it is unclear why Coca-Cola's membership in any plastics coalition or its use of marketing techniques similar to Fairlife's necessarily means that it was directly involved in Fairlife's alleged false advertising here. Thus, the Court finds that Plaintiffs fail to allege Coca-Cola's direct involvement in this action.

Plaintiffs next argue they have sufficiently alleged an agency theory of liability against Coca-Cola. (*Id.* at 20.) Generally, a "parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). However, courts have recognized certain exceptions to this general rule, including "where the subsidiary acts as an agent of the parent corporation." *Bangkok Broad. & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010). "To establish liability of a parent corporation for the acts or omissions of its subsidiary on an agency theory, a plaintiff must show that 'a parent corporation so controls the subsidiary as to cause the subsidiary to become merely the agent or instrumentality of the parent.'" *Cal-Star Prod., Inc. v. Fencepost Prods., Inc.*, No. 2:18-cv-04490-JAK (Ex), 2019 WL 13038581, at *3 (C.D. Cal. Apr. 18, 2019).

Plaintiffs fail to plausibly allege that Coca-Cola has caused Fairlife to become its "agent or instrumentality." *See id.* Plaintiffs are correct that "[w]hether an agency relationship exists . . . is normally a question of fact." (FMTD Opp'n 20 (alteration in original) (citing *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1241 (N.D. Cal. 2004)).) However, the Court finds no facts in the First Amended Complaint that could plausibly suggest an agency relationship between Coca-Cola and Fairlife.

(*See generally* FAC.) Instead, Plaintiffs argue that there is an agency relationship because Coca-Cola must have known of Fairlife's deceptive practices and it had "influence over Fairlife's advertising." (*Id.*) Even assuming Coca-Cola knew of Fairlife's practices, nothing in Plaintiffs' First Amended Complaint suggests Coca-Cola's "influence over [F]airlife's advertising" so dominates Fairlife's advertising as to render Fairlife a mere "agent or instrumentality" of Coca-Cola. *See Cal-Star*, 2019 WL 13038581, at *3.

Given the dearth of facts suggesting Coca-Cola was either directly involved in the claims here or has caused Fairlife to become its agent or instrumentality, the Court **DISMISSES** Coca-Cola from this action with **LEAVE TO AMEND**.

**B.     Consumer Protection and Express Warranty Causes of Action (Counts 1–4)**

In their first through fourth causes of action, Plaintiffs allege breaches of express warranties, the FAL, the UCL, and the CLRA. (FAC ¶¶ 211–81.) Plaintiffs predicate these four causes of action on a misrepresentation theory. Specifically, they allege that Fairlife misrepresented its animal care and sustainability record on its product packaging and on its website. (*See, e.g.*, *id.* ¶¶ 216, 231–32, 251, 274–75.) As the theories underlying Plaintiffs' first four causes of action are related, the Court examines these four causes of action together.

   *1.     Rule 9(b)*

Rule 9(b)'s heightened pleading standard applies to breach of express warranty, FAL, UCL, and CLRA claims grounded in fraud. *See In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1091 (C.D. Cal. 2017) ("The Ninth Circuit has specifically held that Rule 9(b) . . . applies to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud"); *Moody v. Hot Topic, Inc.*, No. 5:23-cv-00447-JGB (SPx), 2023 WL 9511159, at *9 (C.D. Cal. Nov. 15, 2023) (finding that Rule 9(b) applies to breach of express warranty claims grounded in fraud). Here, Plaintiffs advance misrepresentation and omission theories based on Fairlife's alleged fraudulent and

1  deceptive practices.  (*See, e.g., id.* ¶¶ 216, 231–32, 251, 274–75.)  Thus, Plaintiffs must
2  satisfy Rule 9(b)'s heightened pleading standards to state these claims.
3        When alleging fraud, "a party must state with particularity the circumstances
4  constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Allegations must be "specific
5  enough to give defendants notice of the particular misconduct . . . so that they can
6  defend against the charge and not just deny that they have done anything wrong."
7  *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  The Ninth Circuit requires
8  parties to plead "the who, what, when, where, and how of the misconduct charged."
9  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  For example,
10 courts in the Ninth Circuit "have held that a plaintiff does not satisfy Rule 9(b) when
11 the plaintiff generally identifies allegedly misleading statements but fails to specify
12 which statements the plaintiff actually saw and relied upon."  *See, e.g.*, *In re Arris Cable*
13 *Modem Consumer Litig.*, No. 19-cv-01646-LHK, 2018 WL 288085, at *8 (N.D. Cal.
14 Oct. 29, 2019) (citing *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012)).
15       Plaintiffs' First Amended Complaint is sprawling.  For example, Plaintiffs group
16 several misrepresentations together as "Animal Care Claims," including those relating
17 to the Fairlife Logo and multiple statements on Fairlife's website.  (FAC ¶¶ 32–41.)
18 Plaintiffs also group several other unspecified claims as "Sustainability Claims."  (*Id.*
19 ¶ 84.)  However, Plaintiffs explicitly plead reliance on only two specific
20 misrepresentations: the Fairlife Logo and the recyclability claims on Fairlife's bottle
21 label.  Plaintiffs allege that Bhotiwihok "purchased [Fairlife] products in reliance on the
22 message Fairlife's advertising communicated, including through the name Fairlife and
23 the cartoon cow logo."  (*Id.* ¶ 12.)  Similarly, Paugh alleges that he purchased Fairlife
24 products in reliance on the Fairlife Label and the "recycle me" bottle label.  (*Id.* ¶ 14.)
25       However, Plaintiffs do not plead any other misrepresentations with sufficient
26 particularity under Rule 9(b)'s exacting pleading standard because they fail to identify
27 any other statements on which they relied.  The case of *Pirozzi* is instructive.  There,
28 the plaintiff alleged Apple made numerous misrepresentations regarding user privacy

in its App Store Review Guidelines. 913 F. Supp. 2d at 844–45. However, the plaintiff did not specify on which statements she relied when purchasing an Apple Device or applications from the App Store. *Id.* at 845. The *Pirozzi* court found that, while the plaintiff "identifie[d] a number of representations," "she fail[ed] to provide the particulars of her own experience reviewing or relying upon any of those statements." *Id.* at 850. Specifically, nowhere in the plaintiff's complaint did the plaintiff "specify when she was exposed to the statements or which ones she found material to her decisions to purchase" Apple products. *Id.* Thus, the *Pirozzi* court held that the plaintiff failed to meet Rule 9(b)'s heightened pleading standard.

  Here, Plaintiffs allegations regarding Fairlife's misrepresentations are similarly deficient. As in *Pirozzi*, Plaintiffs allege multiple misrepresentations but fail to specify on which ones they relied. For example, Plaintiffs claim that Cornelius "conducted research prior to purchasing, including reviewing and relying upon the claims and advertising on [F]airlife's website regarding animal care and sustainability." (FAC ¶ 13.) However, Plaintiffs fail to identify the specific "statements [Cornelius] actually saw and relied upon." *See In re Arris Cable*, 2018 WL 288085, at *8. Rule 9(b) does not allow Plaintiffs to generally reference statements appearing somewhere on Fairlife's website and broadly state that they relied on them.

  Plaintiffs' allegations regarding Fairlife's alleged omissions fare no better. Although claims based on alleged fraudulent omissions "can succeed without the same level of specificity required by a normal fraud claim," plaintiffs must still plead these omissions with particularity as required by Rule 9(b). *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007). Thus, courts have required plaintiffs to "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information." *Eisen v. Porsche Cars N. Am.*, No. 2:11-

cv-09405-CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) (citing *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009)).

Plaintiffs allege that Fairlife "intentionally fail[ed] to disclose material information about the products," including that Fairlife's products are derived from abused cows and that the products' packaging is not recyclable. (FAC ¶ 274.) However, Plaintiffs do not plead where this information should or could have been revealed. Nor do they identify on which specific "advertisements, offers, or other representations" they relied that omitted critical information about Fairlife's animal care and sustainability practices. *Eisen*, 2012 WL 841019, at *3. Without identifying what specific information Plaintiffs allege Fairlife should have included, and where it should or could have been included, Plaintiffs fail to plead allegations "specific enough to give [Fairlife] notice of the particular misconduct." *See Neubronner*, 6 F.3d at 671.

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' first through fourth causes of action to the extent they are premised on misrepresentations or omissions other than the Fairlife Logo and recyclability claims on Fairlife's bottle label. The Court grants Plaintiffs **LEAVE TO AMEND** if they wish to rehabilitate their first through fourth causes of action with respect to the non-particularized misrepresentations or omissions. The Court considers only whether Plaintiffs plausibly states a claim regarding the Fairlife Logo and the recycling claims on Fairlife's bottle label.

   2.   *Fairlife Logo*

Plaintiffs allege that the Fairlife Logo, consisting of the Fairlife brand name set above a cartoon cow, is deceptive and a misrepresentation of Fairlife's animal care practices. (*See, e.g.*, FAC ¶ 216.) To state a claim for violation of a consumer protection statute or breach of express warranty, Plaintiffs must show that a reasonable consumer could be misled by the Fairlife Logo. *See Ringler v. J.M. Smucker Co.*, 783 F. Supp. 3d 1229, 1240–42 (C.D. Cal. 2025) (applying the reasonable consumer standard to FAL, UCL, CLRA, and breach of express warranty claims). "Under the reasonable

consumer standard, [a plaintiff] must show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Plaintiffs have sufficiently alleged a misrepresentation theory based on the Fairlife Logo. "[B]rand names can be an especially powerful source of misleading information," even if the brand name itself is not a recognized word. *See Hernandez v. Radio Sys. Corp.*, No. 5:22-cv-01861-JGB (DTBx), 2023 WL 4291829, at *9 (C.D. Cal. May 10, 2023). For example, the brand name "PetSafe," although not a word one would find in any reputable dictionary, certainly connotes the idea that by using PetSafe products, one would not cause harm to their pets. *See id.* Here, the Fairlife brand name is an amalgamation of two words: fair and life. The word "fair" is most often associated with positive adjectives, such as "reasonable, right, and just." (FAC ¶ 32.) It follows that combining the words "fair" and "life" together in a brand name may reasonably lead to the assumption that the subject of the brand lives a "fair life." However, when this brand name is superimposed on a cartoon picture of a cow, the implication becomes unmistakable: the cows are living a fair life. Thus, it is well within reason for a consumer to believe that, based on the Fairlife logo, the cows supplying Fairlife's dairy products are living lives free from abuse.

Fairlife argues that the Fairlife Logo is nonactionable puffery. (FMTD 5–6.) "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (citing *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1005 (9th Cir. 2003)). Here, however, the Fairlife brand name, at bottom, suggests that the cows are living lives free from abuse. This connotation is sufficiently "specific or absolute" that a reasonable consumer could certainly rely on it when purchasing a Fairlife product. *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1500 (2009) (O'Rourke, J., concurring) (quoting *Cooks, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). Context also helps here. Fairlife does not just put its brand name on the bottle;

it places it above a cartoon image of a cow, leaving an unmistakable impression: Fairlife sources its dairy from cows that live fair lives. *See Williams*, 552 F.3d at 939 n.3. Taking as true at this pleading stage the substantial evidence that shows Fairlife sources its dairy from cows that live dreadful and appalling lives, it is plausible that Fairlife's labeling is misleading.

For these reasons, the Court finds that Defendants' have adequately pleaded their first through fourth causes of action, to the extent premised on the Fairlife Logo.

### 3. *Recyclability Claims*

Plaintiffs allege that the recyclability claims on the Fairlife bottle are deceptive because the bottle itself is not recyclable. (*See, e.g.*, FAC ¶ 238.) Fairlife argues that Plaintiffs' claims are foreclosed by a safe harbor provision in California law.

California courts recognize that, "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Thus, when "specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Id.*

Here, the California Legislature passed a safe harbor provision that bars Plaintiffs' claims regarding recyclability through October 4, 2026. California Public Resources Code section 42355.51(b)(1) governs instances where recyclability claims are considered deceptive and misleading pursuant to the FAL. However, section 42355.51(b)(2) states that the preceding paragraph—section 42355.51(b)(1)—does not apply to "[a]ny product or packaging that is manufactured up to 18 months after the date the department publishes the first material characterization study required" by section 42355.51(d)(1)(B), "or before January 1, 2024, whichever is later." Read plainly, it appears that the California Legislature intended to give companies eighteen months after publication of a generally applicable material characterization study to comply with recycling guidelines.

On April 4, 2025, the California Department of Resources Recycling and Recovery ("CalRecycle") published its material characterization study as required by section 42355.51(d)(1)(B). *See* Cal. Dep't Resources Recycling Recovery, DRRR-2025-1750, SB 343 Material Characterization Study Final Findings 2023/2024 (2025). Adding eighteen months, this necessarily means that companies like Fairlife have until October 4, 2026, to bring their product packaging in compliance with the CalRecycle study's findings.

The Court finds that this safe harbor provision forecloses all of Plaintiffs' recyclability claims. First, section 42355.51(b) explicitly precludes Plaintiffs' FAL claim. The plain language of the statute provides that Plaintiffs cannot bring a "deceptive or misleading [recyclability] claim pursuant to this section and [the FAL]" for products and packaging manufactured up to eighteen months after publication of the material characterization study. Cal. Pub. Res. Code § 42355.51(b). Thus, Plaintiffs' FAL claims based on recyclability are barred until October 4, 2026.

Second, under the safe-harbor doctrine, section 42355.51(b) also bars Plaintiffs' remaining claims. As the California Supreme Court noted in *Cel-Tech*, when "specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." 20 Cal. 4th at 163. This doctrine extends to CLRA claims as well. *See Lopez v. Nissan N. Am.*, 201 Cal. App. 4th 572, 594 (2011) ("Like UCL claims, claims under the CLRA may be barred under the 'safe harbor' doctrine."). Here, section 42355.51 provides that safe harbor for companies. And where the Legislature has specifically stated that a company's actions are legal, or at the very least, not yet illegal, courts have also found that there can be no breach of express warranty predicated on that action. *See id.* at 596.

For these reasons, the Court finds that California law bars, at least for now, Plaintiffs recyclability claims.

     *4.     Conclusion*

     In summary, the Court **GRANTS IN PART** Fairlife's Motion and **DISMISSES** counts one through four, except as to Plaintiffs' claims regarding Fairlife's Logo, which survive dismissal. The Court dismisses these causes of action **WITH LEAVE TO AMEND** as to every other alleged misrepresentation or omission except Plaintiffs' recyclability claims, which the Court dismisses **WITHOUT LEAVE TO AMEND** and **WITHOUT PREJUDICE**.

**C.    Unjust Enrichment (Count 5)**

     In their fifth cause of action, Plaintiffs allege that Fairlife has been unjustly enriched by retaining revenue derived from purchases of products containing false and misleading statements. (FAC ¶¶ 282–89.) Fairlife argues that California law does not recognize unjust enrichment as an independent cause of action. (FMTD 17.) Fairlife also argues that this cause of action is duplicative of Plaintiffs' consumer protection causes of action and must be dismissed. (*Id.*)

     Unjust enrichment "'is not a cause of action' under California law." *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020). However, courts can still construe unjust enrichment claims as quasi-contract claims for restitution. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"). Courts in the Central District generally follow this approach. *See, e.g.*, *Paya v. Macy's Inc.*, 793 F. Supp. 3d 1201, 1212 (C.D. Cal. 2025) (construing an unjust enrichment claim as a quasi-contract claim). Thus, the Court rejects Fairlife's argument that the Court must dismiss this cause of action "merely because it is not a standalone claim under California law." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 899 (C.D. Cal. 2024).

     The Court also rejects Fairlife's argument regarding the duplicative nature of this cause of action. Courts have generally held that an unjust enrichment claim does not

fail simply "because it may be duplicative of [a plaintiff's] statutory claims." *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1029 (C.D. Cal. 2024) (citing *Astiana*, 783 F.3d at 762). Moreover, to the extent that Fairlife argues that Plaintiffs cannot plead equitable relief (unjust enrichment) as an alternative to legal, statutory relief, that argument flies in the face of the federal rules, which explicitly permit pleading in the alternative. Fed. R. Civ. P. 8(d)(2); *see Parrish v Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1061 (C.D. Cal. 2020) ("The Court agrees with the other district courts that have noted that barring claims for equitable relief at the pleading stage is inconsistent with the federal rules that permit pleading in the alternative.").

For these reasons, the Court **DENIES** Fairlife's Motion as to Plaintiffs' fifth cause of action.

### D. Aiding and Abetting (Count 6)

In their sixth cause of action, Plaintiffs allege that Select Milk aided and abetted Fairlife's false advertising. (FAC ¶¶ 290–95.) Under California law, "liability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong [and that] the defendant substantially assisted." *Casey v. U.S. Bank Nat'l Assn.*, 127 Cal. App. 4th 1138, 1145 (2005). Here, Plaintiffs allege that Select Milk knew of Fairlife's false advertising violations and substantially assisted in them. (FAC ¶¶ 291–93.) As Plaintiffs predicate their aiding and abetting allegations on Fairlife's allegedly fraudulent actions, Plaintiffs must again satisfy Rule 9(b). *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1131 (C.D. Cal. 2003).

Without deciding whether Plaintiffs adequately plead the knowledge element of their aiding and abetting claim, the Court finds that Plaintiffs have not adequately pleaded the substantial assistance element. In California, "even 'ordinary business transactions' . . . can satisfy the substantial assistance element of an aiding and abetting claim." *Casey*, 127 Cal. App. 4th at 1145. However, this liberal standard does not relieve Plaintiffs of their burden to satisfy federal pleading standards. In particular,

"Rule 9(b) requires that the complaint inform the defendant of what he did that constituted substantial assistance." *Neilson*, 290 F. Supp. 2d at 1131 (citation modified).

Plaintiffs' allegations regarding substantial assistance do not meet Rule 9(b)'s pleading requirement. After stripping the conclusory allegations out of the First Amended Complaint, the Court is left with bare allegations concerning Select Milk's relationship with Fairlife, devoid of any context about how this alleged relationship relates to Plaintiffs' underlying false advertising claims. For example, Plaintiffs allege that "Select Milk still operates the dairy farming and supply function for Fairlife." (FAC ¶ 21; *see also id.* ¶ 29.) However, this does not describe how Select Milk's continued operation necessarily means that it substantially assisted Fairlife's false advertising. Similarly deficient is Plaintiffs' allegation that "Select Milk is the primary provider of milk products for [F]airlife." (*Id.* ¶ 22.) Plaintiffs fail to provide the necessary link between how Select Milk's provision of Fairlife's milk products leads to Fairlife's false advertising. Select Milk is left to guess what exact conduct Plaintiffs allege was fraudulent, rendering it unable to "defend against the charge." *Neubronner*, 6 F.3d at 671.

For this reason, the Court **GRANTS** Select Milk's Motion and **DISMISSES** Plaintiffs' sixth cause of action. The Court dismisses this cause of action with **LEAVE TO AMEND**.

### E. Class Action Allegations

Fairlife and Coca-Cola seek to strike Plaintiffs' class allegations, arguing that it is apparent on the face of the First Amended Complaint that Plaintiffs fail to satisfy Rule 23. (FMTD 18–20.) "A decision to grant a motion to strike class allegations . . . is the 'functional equivalent of denying a motion to certify a case as a class action.'" *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017). Fairlife argues that Plaintiffs do not satisfy Rule 23's typicality and predominance requirements because "it is implausible that all putative class members would have reviewed and

relied on any of the challenged statements that are exclusively found on the [F]airlife website when purchasing [F]airlife products at their local store." (FMTD 19.)

The problem with Fairlife's motion to strike class allegations before pleadings are settled is that, because of the Court's disposition here, the only remaining actionable misrepresentation is that relating to the Fairlife Logo. As the Court granted leave to amend, it remains premature to rule on class allegations as the Court cannot conclude that there are no circumstances under which the proposed Class could proceed.

Thus, the Court finds that Fairlife's challenge of the class allegations is premature and **DENIES** Fairlife's Motion as to Plaintiffs' class action allegations **WITHOUT PREJUDICE**. *See, e.g.*, *Cholakyan v. Merecedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245–46 (C.D. Cal. 2011) (collecting cases where courts declined to strike class allegations).

### F.     Injunctive Relief

Fairlife asks the Court to dismiss Plaintiffs' request for injunctive relief because Plaintiffs lack standing. (FMTD 16.)

As Plaintiffs correctly note in their opposition brief, a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows . . . that the advertising was false at the time of the original purchase." (FMTD Opp'n 20 (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018)).) For example, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 889 F.3d at 969–70. Thus, they "need only be willing to purchase [F]airlife products again if the problems with the advertising are" fixed. (FMTD Opp'n 21.)

However, Plaintiffs do not allege future harm in their First Amended Complaint. Plaintiffs only plead their past harms. (*See, e.g.*, FAC ¶¶ 12–14.) Thus, based on their First Amended Complaint, Plaintiffs do not have standing to seek injunctive relief

because they do not allege any potential danger of suffering "'an actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson*, 889 F.3d at 969 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

Thus, the Court **GRANTS** Fairlife's Motion and **DISMISSES** Plaintiffs' request for injunctive relief **WITH LEAVE TO AMEND**.

## V.     CONCLUSION

For the reasons discussed above, the Court **GRANTS** Select Milk's Motion to Dismiss, (Dkt. No. 71), and **GRANTS IN PART** and **DENIES IN PART** Fairlife and Coca-Cola's Motion to Dismiss, (Dkt. No. 72). Specifically, the Court:

- **GRANTS** Fairlife and Coca-Cola's Motion and **DISMISSES** Coca-Cola **WITH LEAVE TO AMEND**;
- **DENIES** Fairlife and Coca-Cola's Motion as to Plaintiffs' first through fourth causes of action, only with respect to the Fairlife Logo misrepresentations;
- **GRANTS** Fairlife and Coca-Cola's Motion and **DISMISSES** Plaintiffs' first through fourth causes of action as to every misrepresentation or omission except the Fairlife Logo, **WITHOUT LEAVE TO AMEND** as to the recyclability statements and **WITH LEAVE TO AMEND** as to the remainder;
- **GRANTS** Select Milk's Motion and **DISMISSES** Plaintiffs' sixth cause of action **WITH LEAVE TO AMEND**;
- **GRANTS** Fairlife and Coca-Cola's Motion and **DISMISSES** Plaintiffs' request for injunctive relief **WITH LEAVE TO AMEND**; and
- **DENIES** Fairlife and Coca-Cola's Motion as to Plaintiffs' fifth cause of action and class action allegations.

Plaintiffs must file an amended complaint within **fourteen (14) days** of this Order, in which case Defendants shall answer or otherwise respond within **fourteen (14) days** of Plaintiffs' filing. If Plaintiffs do not timely amend, then the causes of action and claims the Court dismisses with leave to amend shall be deemed dismissed

with prejudice as of the lapse of Plaintiffs' filing deadline.  In that event, Defendants shall answer the surviving claims in the First Amended Complaint within **fourteen (14) days** of the lapse of Plaintiffs' deadline to amend.

**IT IS SO ORDERED.**

February 13, 2026

*[signature]*

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**
